UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| _____ | ) | |
| MICHAEL J. DIZAZZO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  04-10428-RGS |
| | ) | |
| PETER CARUSO, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**<u>MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS</u>**

Plaintiff Michael J. Dizazzo, a dissatisfied litigant in an earlier federal suit, 01-cv-11239-WGY, brings this action alleging violations of 42 U.S.C. § 1983 by several state defendants,[1] and two counts against Chief Judge William G. Young and his docket clerk, Marie Bell (collectively, the federal defendants), alleging violations of, respectively, unspecified "federal law" and the U.S. Constitution, for which plaintiff seeks $3.5 million each in compensatory and punitive damages. The two counts against the federal defendants must be dismissed. Judge Young is immune from suit for the acts alleged because all were taken in his judicial capacity. Ms. Bell is also immune from suit, because making docket entries is integral to the judicial process, she was allegedly following Judge Young's direction, and court clerks are entitled to absolute immunity under those circumstances.

---

[1] All but two of the state defendants in this case were defendants in plaintiff's previous case, including four district court judges, two district court clerks, and three judges of the appellate division. In this action, plaintiff has added Attorney General Thomas Reilly and an Assistant Attorney General (AAG), who represented the state court judges in the previous action. The previous federal court action was based on plaintiff's dissatisfaction with the outcome of an earlier case in state district court.

**FACTUAL ALLEGATIONS**

The sole allegations against the federal defendants all relate to plaintiff's earlier federal

court case, 01-cv-11239-WGY, and concern the rulings by the District Court on plaintiff's

motions for default judgments.  Specifically, plaintiff alleges that in his earlier civil suit:

> . . . upon the PLAINTIFF filing 10 Motions for DEFAULT against ten (10)
> defendants who refused to Answer said complaint within the twenty (20) days
> ALLOWED under Federal Law, Defendant Young directed Defendants [Attorney
> General Thomas] Reilly and [AAG Matthew] Berge to File opposition by
> submitting that SERVICE upon the Defendants was "Defective," then Defendant
> Young directed defendant Bell to enter False information on the docket sheets to
> show that the PLAINTIFF Served the ten defendants who were in DEFAULT, then
> Defendant YOUNG would DENIED (sic) said Motions for DEFAULT, a most
> compelling "non-Judicial act," by a Chief Judge.

Complaint, ¶ 8.   Plaintiff offers little elaboration on those conclusory allegations in his first

count against the federal defendants, Count Four:

> Defendant Young upon receiving PLAINTIFF'S seven motions for Default Within
> related federal civil suit no. 01cv11239WGY dated September 10,2001, Directed
> Defendants Reilly and Berge to file Opposition by submitting that Service upon the
> seven defendants was DEFECTIVE, then Defendant YOUNG Directed Defendant
> Bell, his docket clerk to enter false statements re: the Service upon the seven
> Defendants, then Defendant Young would deny said Motions for default, a most
> compelling non-judicial act, depriving the PLAINTIFF Of Equal protection under
> federal law, said denial dated Sept. 17,2001.
>
> Defendant Young upon receiving three more Motions for Default within related
> Federal suit dated October 29, 2001, then directed Defendants Reilly and Berge not
> to file any opposition, and then directed defendant Bell to enter false Statements
> into the dockert entries, then again denying the PLAINTIFFs Motions Default,
> dated November 1,2001, repeating most compelling non-judicial act by Defendant
> Young.

Id., ¶¶ 12-13.  Count Five, against all defendants, contains no independent factual allegations,

but alleges that the previous allegations constitute a knowing and malicious conspiracy to violate

plaintiff's Fifth, Sixth and Fourteenth Amendment rights.  Id., ¶¶14-17.

2

**ARGUMENT**

**The Federal Defendants Are Immune From Liability And Suit Arising Out of Their Official Judicial or Quasi-Judicial Actions.**

The complaint may be dismissed only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Harper v. Cserr, 544 F.2d 1121, 1122 (1st Cir. 1976). The Court need not credit conclusory, vague, or general allegations, however. See, e.g., Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982); Kadar Corp. v. Milbury, 549 F.2d 230, 233 (1st Cir. 1977). Dismissal is appropriate where, as here, a complaint appears to state only frivolous or wholly insubstantial claims. Parratt v. Taylor, 451 U.S. 527, 532 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986); Wheeldin v. Wheeler, 373 U.S. 647, 649 (1963); Condor Corp. v. City of St. Paul, 912 F.2d 215, 219-20 (8th Cir. 1990). Here, the sole counts against the federal defendants arise from plaintiff's dissatisfaction with the outcome of his earlier federal case, and consist entirely of speculative, conclusory allegations and insinuations that Judge Young colluded with the Attorney General of the Commonwealth of Massachusetts in denying plaintiff's motion for default judgments against the state defendants, and directed Ms. Bell to make false docket entries to effect the conspiracy. On its face the Complaint fails to state a claim for relief against the federal defendants and must be dismissed because, no matter how vigorously he disagrees with the outcome of his previous case, on the facts alleged, plaintiff cannot sue the judge and docket clerk of that earlier case.

**A.    Chief Judge Young Is Absolutely Immune From Liability and From Suit.**

It is well established that a judge is immune from liability for money damages for actions

3

taken in his judicial capacity.  Judicial immunity has long been recognized at common law to

discourage collateral attacks on judgments.  See Forrester v. White, 484 U.S. 219, 225-229

(1991).  As the Supreme Court observed in 1967:

> Few doctrines were more solidly established at common law than the immunity of judges
> from liability for damages for acts committed within their judicial jurisdiction, as this
> Court recognized when it adopted the doctrine, in Bradley v. Fisher, 13 Wall. 335, 20
> L.Ed. 646 (1872). This immunity applies even when the judge is accused of acting
> maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or
> corrupt judge, but for the benefit of the public, whose interest it is that the judges should
> be at liberty to exercise their functions with independence and without fear of
> consequences.' (Scott v. Stansfield, L.R. 3 Ex. 220, 223 (1868), quoted in Bradley v.
> Fisher, supra, 349, note, at 350.) It is a judge's duty to decide all cases within his
> jurisdiction that are brought before him, including controversial cases that arouse the
> most intense feelings in the litigants. His errors may be corrected on appeal, but he
> should not have to fear that unsatisfied litigants may hound him with litigation charging
> malice or corruption. Imposing such a burden on judges would contribute not to
> principled and fearless decisionmaking but to intimidation.

Pierson v. Ray, 386 U.S. 547, 553-554 (1967).

Judicial immunity is a complete immunity from suit and not simply protection from an

ultimate assessment of damages.   Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam).

A judge is entitled to absolute immunity for all judicial actions unless "taken in a complete

absence of all jurisdiction," id. at 11-12, and immunity is not overcome by allegations of bad

faith or malice. . . ."  Id.  See also Stump v. Sparkman, 435 U.S. 349, 355, 364, reh'g denied, 436

U.S. 951 (1978) (noting that the doctrine of judicial immunity is grounded in "a general principle

of the highest importance to the proper administration of justice[: i.e.,] that a judicial officer, in

exercising the authority vested in him, should be free to act upon his own convictions, without

apprehension of personal consequences to himself") (internal quotation marks omitted).  The

immunity "applies no matter how erroneous the act may have been, how injurious its

consequences, how informal the proceeding, or how malicious the motive." Cok v. Cosentino,

4

876 F.2d 1, 2 (1st Cir. 1989), citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985).  See

Bettencourt v. Bd. of Reg. In Med., 904 F.2d 772, 782 (1st Cir. 1990) (acknowledging Supreme

Court recognition that there are some officials "'whose special functions require a full exemption

from liability'" (quoting Butz v. Economou, 438 U.S. 478, 508 (1977)); Decker v. Hillsborough

County Atty.'s, 845 F.2d 17, 21 (1st Cir. 1988) (observing that a judge "does not lose immunity

because an action is erroneous, malicious, in excess of his authority, or disregardful of

elementary principles of procedural due process").  Judicial immunity applies in suits alleging

civil rights violations.  Id.; Pierson v. Ray, 386 U.S. at 554.  Under this well-established

doctrine, Chief Judge Young is absolutely immune – from liability and from suit –  for the acts

alleged in the Complaint.

     The Supreme Court has recognized only two situations in which judicial immunity can be

overcome.  First, a judge is not immune from liability for "actions not taken in the judge's judicial

capacity."  Mireles v. Waco, 502 U.S. at 11.  "[W]hether an act by a judge is a 'judicial' one

relates to the nature of the act itself, i.e., whether it is a function normally performed by a judge,

and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial

capacity."  Stump v. Sparkman, 435 U.S. at 362.  See also Cleavinger v. Saxner, 474 U.S. at

201-202. Second, a judge does not enjoy immunity for actions taken in the complete absence of

jurisdiction.  Mireles, 502 U.S. at 11-12; see also Bradley. v. Fisher, 13 Wall. 335, 80 U.S. 335

(1871).  Neither exception applies in this case.

     The actions alleged in the Complaint were all taken in the context of a case pending

before Chief Judge Young, and all concern his handling of motions filed in that case; they were

unquestionably "judicial," taken in Judge Young's capacity as the Judge to whom the case was

assigned, pursuant to the jurisdiction conferred by 28 U.S.C. § 1331 and 42 U.S.C. § 1983.  In

essence, plaintiff complains of the ruling on his motion for default judgments against several of

the defendants in his action before Judge Young.  First, the plaintiff could only have expected,

when he filed his § 1983 Complaint, to "deal[ ] with the judge in his judicial capacity."  Stump v.

Sparkman, 435 U.S. at 362.  Second, the disposition of motions filed in cases pending before a

judge is unquestionably "a function normally performed by a judge."  See, e.g.,  Decker v.

Hillsborough County Attorney's Office, 845 F.2d at 17 (upholding judicial immunity from suit

based on allegations that judge failed to give plaintiff a hearing before ruling on his motion for

return of property, unduly delayed scheduling hearings on plaintiff's motions, gave plaintiff

inadequate time to argue, failed to rule timely or at all on various of plaintiff's motions, and

failed to swiftly hold defendants in contempt to enforce compliance with court order).

The docket itself indicates nothing untoward or extra-judicial.  Plaintiff moved for entry

of default as to seven of the defendants on September 10, 2001.  Before any action was taken on

that motion, AAG Matthew Q. Berge (a defendant in the current action), entered an appearance

for at least five of the seven on September 14, 2001, responded to (opposed) the motion for

default, and also moved to dismiss.  Docket # 20.  The Complaint alleges that Judge Young then

denied "said motions for default."  Complaint, ¶ 12.  The docket indicates that on September 17,

2001, Judge Young allowed the motion to dismiss, on grounds that "the claims against the

judicial defendants and their employees [are] barred by the doctrine of judicial immunity."  On

that same date, he denied the motions for default.  See docket entries at September 17, 2001.

The handling of and ruling on the motions for entry of default were irrelevant to the basis

for dismissal of plaintiff's claims, and therefore were not the cause of any alleged damage.  The

6

appearance of counsel for defendants and his filing of a motion to dismiss, as well as the Court's

granting of the motion to dismiss, rendered moot the motions for entry of default judgments.[2]

See Lundahl v.Zimmer, 296 F.3d 936, 938-939 (10th Cir. 2002) (holding that plaintiff's action

against district court clerk and chief deputy clerk to compel clerks to enter default judgment in a

separate case was rendered moot when judge in other case dismissed it for lack of subject matter

jurisdiction).  If plaintiff is unhappy with the ruling on the motion to dismiss, his appropriate

course of action was to appeal that ruling; under the doctrine of judicial immunity he cannot

collaterally attack that judgment and subsequent closing of his case as a violation of his

constitutional rights.  Judicial immunity serves as a device for discouraging collateral attacks on

judgments, thereby reinforcing that appellate procedures are the standard system for correcting

judicial error, and so "protects judicial independence by insulating judges from vexatious actions

prosecuted by disgruntled litigants."  Forrester v. White, 484 U.S. at 225 (observing that "the

nature of the adjudicative function requires a judge frequently to disappoint some of the most

intense and ungovernable desires that people can have").

       Nor can judicial immunity be avoided by casting the allegations as part of a conspiracy.

First, the allegations implying a conspiracy are conclusory and speculative, unsupported by any

allegation of material facts.  Plaintiff alleges that "Defendant Young directed Defendants Reilly

and Berge to File opposition by submitting that SERVICE upon the Defendants was

'Defective.'"  Complaint ¶ 8.  In Count 5, plaintiff alleges that all of the defendants knowingly

conspired to violate plaintiff's Fifth, Sixth, and Fourteenth Amendment rights.  These bald

---

[2]Chief Judge Young ruled that the judges and clerks were immune from suit; it is absurd to suggest, as plaintiff seems to do, that the motion(s) for entry of default judgments should have been granted because filed before the defendants moved to dismiss.

assertions are insufficient to state a claim for constitutional violations. See Slotnick v. Garfinkle, 632 F.2d 163, 165 (1st Cir. 1980) (holding that *pro se* complaint baldly alleging that six attorneys, two state court judges, a state court clerk, and justice of the peace conspired to deprive plaintiff of constitutionally protected rights was properly dismissed under Rule 12(b)(6)). Moreover, even taken as true, such allegations simply do not turn a case of dissatisfaction with a Judge's rulings into a cognizable Bivens claim for constitutional violations. As the Fifth Circuit observed in a Section 1983 case brought against a state court judge who allegedly accepted bribes and participated in a conspiracy to deprive plaintiff of due process and to destroy his corporation:

> It requires little skill or imagination to convert many allegations that a judge has ruled in "bad faith" into allegations that he conspired to do so or was bribed; thus, the threat to disinterested decision-making is similar. An embittered, losing party is just as likely to allege bribery or conspiracy as any other malevolent motive of a judge. The possibility that judges will be driven to wasteful and distracting self-protective measures is just as great where liability could flow from conspiracy or bribery charges as from a charge of "bad faith."

Holloway v. Walker, 765 F.2d 517, 523 (5th Cir. 1985). The Holloway Court thus held that plaintiff's allegations did not defeat the judge's immunity from liability for the alleged harms. See also Overton v Torruella, 183 F.Supp.2d 295, 305 (D. Mass. 2001) (civil RICO remedy not available against judges, who are protected by judicial immunity). Likewise, here, the counts against Judge Young must be dismissed because they are barred by absolute judicial immunity.

**B.    Ms. Bell is Absolutely Immune From Suit for the Acts She is Alleged to Have Taken.**

The Complaint alleges that Ms. Bell, upon being "directed" to do so by Chief Judge Young, "enter[ed] false information on the docket sheets to show that the Plaintiff served the ten defendants who were in DEFAULT." Complaint ¶ 8. She is immune from an action for money

damages for allegedly making false docket entries because court personnel, performing actions integral to the judicial process and under instructions of a judge, are also entitled to absolute immunity.  When court personnel undertake actions pursuant to the explicit direction of a judicial officer, courts have held that immunity is also available to clerks and other employees of the court system.  See, e.g.,  Cok v. Cosentino 876 F.2d 1,3 (1st Cir. 1989) (holding that Guardian ad Litem and Conservator of assets were entitled to absolute, quasi-judicial immunity for activities "integrally related to the judicial process"); Green v. Maraio, 722 F.2d 1013, 1018  (2d Cir. 1983) (holding that district court properly dismissed claims against court reporter where complaint alleged reporter acted upon Judge's instructions in allegedly altering transcript); Foster v. Walsh, 864 F.2d 416, 417-18 (6th Cir. 1988) (holding that clerk was absolutely immune from liability for issuance of erroneous bench warrant on judge's order); Rogers v. Bruntrager, 841 F.2d at 853, 856 (8th Cir. 1988) (holding that, along with prosecutors, deputy circuit clerk was also absolutely immune from suit for alleged civil rights violations in issuing arrest warrant because clerks "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction,") (quoting McCay v. Winter, 745 F. 2d 533, 534 (8th Cir. 1984)).  See also Rogers v. Bruntrager, 841 F.2d 853, 856 (8th Cir.1988) (concluding deputy clerk entitled to absolute immunity from suit for issuing an arrest warrant at the direction of the assistant circuit judge); Tarter v. Hury, 646 F.2d 1010, 1013 (5th Cir.1981) (stating that court clerks "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction"); Dellenbach v. Letsinger, 889 F.2d 755, 763 (7th Cir.1989) (court reporter and clerks who told plaintiff to pay for unnecessary transcript at the request of the judge were entitled to

quasi-judicial immunity); Eades v. Sterlinske, 810 F.2d 723, 726 (7th Cir.1987) (clerk and court reporter who prepared and filed a false certificate summarizing an instruction conference at the direction of the judge were entitled to quasi-judicial immunity).

To the extent a federal court clerk is protected by absolute immunity, his or her immunity is derivative of the judge's. See Cox v. Cosentino, 976 F. 2d at 3; Williams v. Wood, 612 F.2d 982, 984-95 (5th Cir. 1980). The policy justifying an extension of absolute immunity in these circumstances is to prevent court personnel and other officials from becoming a " 'lightning rod for harassing litigation' aimed at the court." Ashbrook v. Hoffman, 617 F.2d 474, 476 (7th Cir.1980) (quoting Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno, 547 F.2d 1, 3 (1st Cir.1976)); see also Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992) (clerk who refused, at the direction of the judge, to accept filing of complaint was entitled to quasi-judicial immunity); Mays v. Sudderth, 97 F.3d 107, 113 (5th Cir.1996).

Here, plaintiff specifically alleges that Ms. Bell made false docket entries at Judge Young's direction.[3] Complaint ¶ ¶ 8, 12-13. Based on plaintiff's own allegations, Ms. Bell is like the court-appointed receiver who, in the view of the First Circuit, "faithfully and carefully carries out the orders of his appointing judge," and who therefore "must share the judge's

---

[3] Because the docket entries in question related to the motion for a default judgment, that alone supports Ms. Bell's entitlement to absolute immunity. See Lundahl v. Zimmer, 296 F.3d 936, 939 (10th Cir. 2002) (observing, in holding that district court correctly dismissed action for money damages against clerk who made decision to refer applications for entry of default judgment to the judge presiding over the case, that "Court clerks, entrusted with the entry of default judgments pursuant to Fed.R.Civ.P. 55, fall within that category of judicial officers who, through the performance of "judicial acts," "authoritatively adjudicate private rights"(citations omitted)).

absolute immunity."[4]  Kermit Constr. Co., 547 F.2d at 3; see also Forte v. Sullivan, 935 F.2d 1, 3 (1st Cir. 1991).   Under the circumstances alleged, Ms. Bell is absolutely immune from suit for damages arising from docket entries made at Chief Judge Young's direction, and so the counts against her must be dismissed.

## CONCLUSION

For the foregoing reasons, the federal defendants ask that their motion be granted and that the Court order that the two counts (Four and Five) against them be dismissed with prejudice.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ Barbara Healy Smith
       Barbara Healy Smith
       Assistant U.S. Attorney
       U. S. Attorney's Office
       John Joseph Moakley
       United States Courthouse
       1 Courthouse Way, Suite 9200
       Boston, MA  02210
       (617) 748-3100

Dated: May  20 , 2004

---

[4]Even if not following judicial orders, Ms. Bell would be entitled at minimum to qualified immunity.  The First Circuit has recognized the "general agreement" that court personnel acting upon orders from a judge are absolutely immune from suit, but has not decided the question whether such officials are entitled to quasi-judicial absolute or only qualified immunity when not acting pursuant to judicial orders.  See Forte v. Sullivan, 935 F.2d 1, 3-4 (1st Cir. 1991) (collecting cases and discussing circuit split, but not deciding question).